IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JARED PRYSZCZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-2538 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| WILLOWBROOK FORD, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jared Pryszcz[1] initiated this action on May 11, 2021, by filing a four-count complaint [1] against Defendants Willowbrook Ford, Inc. ("Willowbrook"), Ford Motor Company ("Ford Motor"), Kia Motors America, Inc. ("Kia"), and Brian Zarawaus as an individual. All parties have filed motions to dismiss. [14, 19, 36.] For the following reasons, Ford's motion to dismiss [14] is granted; Kia's motion to dismiss [19] is granted; and the joint motion to dismiss by Willowbrook and Zarawaus [36] is denied. Willowbrook and Zarawaus also have moved to seal certain exhibits to their motion to dismiss [35], and that motion is granted. Counsel are directed to file a joint status report no later than April 11, 2022, that includes (a) a deadline for Defendants to file a responsive pleading, (b) a proposed discovery plan, and (c) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. Finally, given (a) the acrimony between the parties and counsel evident in the briefs filed to date, (b) the importance of structuring discovery efficiently in this matter, and (c) the possibility of additional sanctions motions at a later stage of the case, it is very likely that this case will be referred to the assigned Magistrate Judge for discovery supervision;

---

[1] It is not clear whether Plaintiff's name is Jared Pryzcz, as it is spelled in the complaint [1], or Jared Pryszcz, as it is spelled in Plaintiff's most recent brief [46].

however, a final decision on a referral will be deferred until after the Court reviews the joint status report.

## I.     Background[2]

Plaintiff is a brown-skinned, Arabic-American of Jordanian national origin. [1 at ¶ 1.] Plaintiff began working as a sales manager with Willowbrook on August 13, 2018. [*Id.* at ¶ 11.] Willowbrook is an automotive dealership authorized to sell vehicles manufactured by Ford [*id.* at ¶ 18.], and KIA [*id.* at ¶ 23.  By selling vehicles manufactured by both of these companies, Willowbrook is subject to certain policies and procedures established by both Ford and KIA, respectively, such as "the location and designation of the type of dealership, i.e. sub-prime, or prime." [*Id.* at ¶¶ 19–20; 25.]  In addition, both Ford and KIA have established certain standards for Willowbrook employees such as "rate of pay or commission, retirement benefits, insurance and other benefits offered to employees . . . , the type and number of vehicles the employee has available for sale, the price range for which a given vehicle may be sold, and policies related to employment discrimination, sexual harassment, etc." [*Id.* at ¶ 21; see also *id.* at ¶ 26.]

During Plaintiff's tenure as a Willowbrook salesperson, he was unaware of any job performance issues.  To the contrary, according to Plaintiff, sales at Willowbrook increased by approximately 40% over that time. [*Id.* at ¶¶ 12, 14.]  In July 2020, however, Plaintiff received a disciplinary write-up regarding two incidents, one relating to a customer's lease payments and the other "involving a seat in a used Sedona," a problem which, according to Plaintiff, was "created by the Parts Department." [*Id.* at ¶ 14.]  According to the complaint, another employee, Dragon Markowski, "made a $4,000 error but received no discipline." [*Id.*]

---

[2] For purposes of Defendants' motions to dismiss, the Court accepts as true all well-pled allegations set forth in the complaint and draws all reasonable inference in Plaintiff's favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

On July 28, 2020, Plaintiff's supervisor, Brian Zarawaus, who is white, called Plaintiff into his office and terminated him. [*Id.* at ¶ 15.] Zarawaus told Plaintiff that he belonged in a "sub-prime store," which Plaintiff asserts is a term referring to stores serving "predominately non-white populations, with low-income and challenged credit ratings." [*Id.*] Plaintiff's firing occurred shortly after Zarawaus terminated Willowbrook's only other non-white sales manager [*id.* at ¶ 16], and a white sales manager was hired to replace Plaintiff [*id.* at ¶ 17].

Plaintiff initiated this action on May 11, 2021 by filing a four-count complaint against Willowbrook, Ford, Kia, and Zarawaus, in his individual capacity. [See 1.] Plaintiff alleges claims for (1) race discrimination in violation of Title VII; (2) race discrimination in violation of Section 1981; (3) color discrimination in violation of Title VII; (4) national origin discrimination in violation of Title VII. Plaintiff asserts all four claims against Willowbrook, Ford, and Kia, and only one claim (Count II, race discrimination in violation of Section 1981) against Zarawaus. All Defendants now move to dismiss the complaint and for sanctions pursuant to Federal Rule of Civil Procedure 11 and the Court's inherent power pursuant to 28 U.S.C. § 1927 [see 14, 19, 36]. Plaintiff has voluntarily dismissed his claims against Ford and Kia [44, 45], but continues to pursue his claims against Willowbrook and Zarawus.

## II.    Legal Standard

Rule 11 establishes that each time an attorney or unrepresented party presents a pleading to the court, he "certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that (1) it is "not being presented for an improper purpose," (2) "the claims are warranted by existing law," and (3) "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). A court may impose sanctions on parties, their counsel, or both for failing to comply with Rule 11(b). Fed. R. Civ. P. 11(c).

3

Under 28 U.S.C. § 1927, an attorney "who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 838 n.1 (7th Cir. 2010). The Court has discretion under Section 1927 to impose sanctions "when an attorney has acted in an 'objectively unreasonable manner' by engaging in 'serious and studied disregard for the orderly process of justice.'" *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (quoting *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994).

## III.    Analysis

Defendants ask the Court to impose sanctions on Plaintiff and his counsel, including dismissal of this action, on three grounds. First, "Plaintiff knew his gross misconduct was the cause of his discharge and Plaintiff's counsel refused the opportunity to review the evidence either prior to or after filing the complaint." [37 at 6.] Second, Plaintiff has not alleged sufficient facts to support claims for employment discrimination under Section 1981 or Title VII. Third, according to Defendants, "dismissal is the appropriate sanction pursuant to Rule 11 and the Court's inherent power because Plaintiff knew the allegations were false and because counsel has established a pattern of filing frivolous complaints." [*Id.* at 11.]

Defendants repeatedly insist that "the overwhelming evidence" shows a "legitimate non-discriminatory reason for the discharge decision" [37, at 3]—namely, that Plaintiff was terminated because he falsified customer financial information in violation of Willowbrook's integrity policy, thereby exposing Willowbrook to potential legal and financial liability. When Plaintiff's counsel wrote a letter to Willowbrook in December 2020 accusing it of having discriminated against Plaintiff based on his race, Willowbrook responded to Plaintiff's counsel with a "detailed letter

identifying the true and legitimate basis for Plaintiff's discharge, including the fact that, among other things, Plaintiff had altered customer financial information in order to make automobile sales." [37 at 2.] Plaintiff's counsel did not respond to Willowbrook's correspondence and proceeded several months later to initiate this action by filing a complaint on May 11, 2021. [*Id.*]

Upon receipt of the complaint, Willowbrook wrote again to Plaintiff's counsel "providing more detailed information related to the transactions in question and the improper alterations to customer financial information made by Plaintiff, and offering to let Plaintiff's counsel personally inspect the information." [*Id.*] As with Willowbrook's first letter to Plaintiff's counsel, this second correspondence went unacknowledged. [*Id.*] According to Willowbrook, failure by Plaintiff's counsel to review the evidence of its legitimate basis for terminating Plaintiff amounts to sanctionable conduct under Rule 11, as counsel "failed to comply with her ethical obligations and properly investigate the facts prior to filing this suit." [37 at 3.]

Before addressing the substance of Defendants' motion, the Court notes one procedural aspect that is integral to the Court's ruling on the instant motion. Defendants submitted a total of 19 exhibits in support of their briefs in support of their request for sanctions [see 37-1–37-12; 50-1–50-7]. They insist that this "evidence" demonstrates (a) their legitimate reason for terminating Plaintiff's employment; and (b) their repeated failed attempts to communicate with counsel in an attempt to avoid litigation. Although the parties have not engaged in discovery, Defendants ask the Court to simply take these exhibits and the inferences drawn from them as fact and accept that under these circumstances—Plaintiff's alleged falsification of customer financial information— there is no basis for Plaintiff's employment discrimination claim. Perhaps Defendants believe that they can ask the Court to look beyond the pleadings because their motion is not a typical pre-answer motion pursuant to Federal Rule of Civil Procedure 12. But the issue here is not the

particular vehicle Defendants use in seeking dismissal, it is the timing.[3]  Consideration by the
Court of Defendants' extra-pleading evidence is "especially problematic * * * at the pre-discovery
stage in employment-discrimination cases, because plaintiffs with such claims ordinarily must
marshal the kinds of evidence that one usually can only gather during the discovery phase in order
to carry their burden of establishing that the legitimate reasons the defendant has proffered are, in
fact, pretextual, and that the real reason for the adverse employment action is a prohibited one."
*Ross v. United States Capitol Police*, 195 F.Supp.3d 180, 193 (D.D.C. 2016).

Plaintiff pushes back on Defendants' tactic in two ways.  First, he stresses the distinction
between his claim of discrimination and Defendants' defense of a legitimate, non-discriminatory
basis for discharge.  Plaintiff's counsel describes meetings with various Willowbrook employees,
including Plaintiff, in her pre-suit investigation.  According to this account, each of these
employees gave credible accounts of discrimination and/or disparate treatment.  Counsel then
came forward with this lawsuit, which she insists reflects Plaintiff's view of his treatment while
employed at Willowbrook.  It certainly is possible for a plaintiff to face discrimination in the
workplace *and* be terminated for violating company policy, and at the early stages of a case, a
court is hard-pressed to negate either or both of these theoretical outcomes without the benefit of
the ordinary adversary processes, including discovery, depositions, and the like.

Defendants both attack the sufficiency of Plaintiff's *prima facie* case and assert that they
have a non-pretextual, legitimate, non-discriminatory reason for firing him in any event.  But their
motion injects an enormous volume of material into the case that is outside the pleadings.  And at
least some of these assertions cannot be accepted as gospel without at least some opportunity for

---

[3] It is worth noting, however, that while the Court has the authority to impose a sanction of dismissal,
"dismissal is a harsh sanction," and such a penalty is not lightly imposed. *Jimenez v. Madison Area Tech.
Coll.*, 321 F.3d 652, 657 (7th Cir. 2003).

adversary testing. To give just a few examples: In attempting to refute Plaintiff's *prima facie* allegations, Defendant Zawaraus denies knowing Plaintiff's heritage and insists that he did not make any derogatory statements to Plaintiff at the time of Plaintiff's termination. Denials of wrongdoing are commonplace and self-serving testimony certainly is admissible. In every "he said, he said" dispute, the trier of fact gets to decide who is telling the truth. But trial comes at the end of the case, not the beginning. So, the Court cannot, at this initial stage of the case, simply accept Zawaraus' denials and call it a day. Turning to Defendants' asserted rationale for their actions, Plaintiff insists that at the time of his dismissal he was not made aware of any of the numerous instances of misconduct that are featured in Defendants' submissions [see 46, at 6-7]. Plaintiff further insists that many of the discrepancies in customer files were the responsibility of others at the company, including the Finance Manager [see *id*. at 9-10]. He also claims to have no recollection of some of the customers whose information allegedly was false or misleading [*id*. at 10-12] and claims never to have run credit reports on these customers. In addition, he points to something called a "recap sheet" as potentially important evidence that has not been produced.

The Court has no way of definitively—or even confidently—sorting out these disputes based on a battle of affidavits. The discovery process is meant to test the memory and veracity of the parties and third parties who participated in the events of significance to the case. It also offers an opportunity to explain the various roles at the company, identify which individuals had access to which computer programs and files, and other critical issues about the handling of each customer's account. Perhaps multiple individuals had access; perhaps there are telltale markers and digital fingerprints. Whatever the case, the Court cannot vouch for one side's presentation of a mountain of "evidence" under Rule 11.

Rule 11 defines "a frivolous argument or claim" as "one that is 'baseless and made without a reasonable and competent inquiry.'" *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)). In imposing an affirmative duty to investigate, "Rule 11 'requires counsel to read and consider before litigating.'" *U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005) (quoting *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986)). "The court must 'undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless.'" *Cuna Mut. Ins. Soc. v. Office and Pro. Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (quoting *Nat'l Wrecking Co. v. Int'l Bhd. Of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993)). "Sanctions will be imposed if counsel files a complaint with improper motives or without adequate investigation." *Brunt v. Serv. Emp. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002).

Defendants assert that by refusing their offer to review what they submit is evidence of the non-discriminatory basis for Plaintiff's termination, Plaintiff's counsel failed to conduct adequate investigation before initiating this action. Plaintiff's counsel maintains that she conducted adequate investigation before filing the complaint. As noted above, she states that five different Willowbrook employees came forward with allegations to suggest that the dealership discriminates against women and people of color and that pre-suit interviews with Plaintiff that corroborated the reports of those five other employees, giving counsel reason to believe that Plaintiff's termination had been another one of those allegedly discriminatory acts. [See 46 at 5.] And while Defendants assert that Plaintiff himself knew that he was fired for non-discriminatory reasons based on his history of discipline, Plaintiff asserts that, to the contrary, the discipline he received before

termination is more evidence that he was treated differently from the dealership's white employees and that he was not given the full story on the day of his firing. [*Id.* at 6.]

"The focus in Rule 11 sanctions is on what counsel knew at the time the complaint was filed, not what subsequently was revealed in discovery." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir. 2004). As the record exists now, the Court cannot credit one side or the other in regard to whether Plaintiff knew that he was terminated for non-discriminatory reasons but chose nonetheless to pursue this action. Nor can the Court conclude with any degree of certainty that Plaintiff's counsel had any reason to doubt the truthfulness of Plaintiff's account of his termination or the stories of alleged discrimination witnessed or experienced by the other Willowbrook employees with whom counsel communicated. And although Plaintiff's counsel might have engaged with Defendants' efforts to convince her to drop this case, she was not obligated to accept a version of events proffered by counsel for Defendants when her client insisted that (a) his memory differed from theirs and (b) others may have had access to the accounts that Defendants insist were altered.

The Seventh Circuit has cautioned that Rule 11 should not be used as "a battleground for satellite controversies wherein, in effect, the tail would wag the dog, potentially diverting judicial resources from the prompt disposition of the merits of controversies." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.,* 9 F.3d 1263, 1269 (7th Cir.1993). To forestall such use, a court should apply Rule 11 sanctions only "with utmost care and caution." *Fed. Deposit Ins. Corp. v. Tekfen Constr. and Installation Co., Inc.,* 847 F.2d 440, 444 (7th Cir.1988). In the end, the Court concludes that Rule 11 sanctions are inappropriate at this early stage in the litigation given the factual disputes at the heart of Plaintiff's complaint and Defendants' responses.

With all of this said, the Court offers further guidance for both sides in this already-contentious litigation. If Defendants believe that Plaintiff truly cannot satisfy the pleading standards for a *prima facie* case, accepting as true the well-pled allegations of the complaint and not improperly contesting them with conclusory denials, they are free to file a Rule 12(b)(6) motion as their responsive pleading. If Defendants acknowledge that the complaint clears the plausibility standard but believe that the uncontroverted facts show their entitlement as a matter of law on their reason for termination, they can seek summary judgment. Rule 56 can be deployed at any time, so perhaps Defendants should focus their early discovery efforts on that issue.

Indeed, perhaps discovery will reveal that Defendants' version of the facts is the only one supported by the evidence and that Plaintiff's asserted lack of memory and attempts to point the finger at others cannot be sustained. If so, Defendants can return at a later stage of the case with a renewed motion for sanctions under Rule 11 and/or Section 1927. See, *e.g.*, *McGreal v. Village of Orland Park*, 928 F.3d 556, 559-60 (7th Cir. 2019) (explaining that Rule 11 obligations apply "at each stage of litigation" and affirming imposition of Rule 11 sanctions where Plaintiff's counsel "disregard[ed] the complete lack of evidence" in opposing summary judgment and responded to defendants' statement of material facts with "disingenuous and misleading statements"). In other words, if Defendants are correct in their assertion that the incontrovertible evidence will show that Plaintiff "altered customer financial information in order to make automobile sales," and that he was aware of his own misconduct prior to the filing of this lawsuit—*i.e.*, that he had been properly trained on how to ethically do his job and knowingly engaged in shady or illegal actions—then he could be personally sanctioned for fomenting vexatious litigation. In any event, the record must be developed further before the Court can determine whether dismissal and/or any other sanctions are warranted. See Wright & Miller, 5A FED. PRAC. & PROC.

10

Cɪᴠ. § 1337.1 (4th ed. Apr. 2021 update) ("[I]f the challenged conduct is that there is no factual support for the institution of the action itself or occurs during a hearing or at trial, the question of whether there has been a Rule 11 violation generally should not be decided until after the litigation is completed.").

**IV.   Conclusion**

For the foregoing reasons, Ford's motion to dismiss [14] is granted; Kia's motion to dismiss [19] is granted; the jointly filed motion to seal by Willowbrook and Zarawus [35] is granted; and the jointly filed motion dismiss by Willowbrook and Zarawus [36] is denied.  Counsel for Plaintiff, Willowbrook, and Zarawus are directed to file a joint status report no later than April 11, 2022, that includes (a) a deadline for Defendants to file a responsive pleading, (b) a proposed discovery plan, and (c) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference.  A determination on whether to refer this matter to the assigned Magistrate Judge for discovery supervision will be made after the Court reviews the joint status report.

Dated:  March 28, 2022

Robert M. Dow, Jr.
United States District Judge